1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   TAMMY ORTIZ,                     )   NO. EDCV 08-00797 SS
                                      )
12                  Plaintiff,        )
                                      )
13           v.                       )   **MEMORANDUM DECISION AND ORDER**
                                      )
14   MICHAEL J. ASTRUE,               )
     Commissioner of the Social       )
15   Security Administration,         )
                                      )
16                  Defendant.        )
     ─────────────────────────────────)

17

18

19                          **INTRODUCTION**

20

21       Tammy Ortiz ("Plaintiff") brings this action seeking to overturn

22   the decision of the Commissioner of the Social Security Administration

23   (hereinafter the "Commissioner" or the "Agency") denying her application

24   for Supplemental Security Income ("SSI").   The parties consented,

25   pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

26   United States Magistrate Judge.   This matter is before the Court on the

27   parties' Joint Stipulation ("Jt. Stip.") filed on March 18, 2009.   For

28   the reasons stated below, the decision of the Commissioner is AFFIRMED.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on December 19, 2005. (Administrative Record ("AR") 73-77). Plaintiff listed November 1, 2005 as the onset date of her disability. (AR 73). The Commissioner denied benefits on May 11, 2006. (AR 42-46). Plaintiff submitted a request for reconsideration on June 16, 2006. (AR 49). On January 4, 2007, the Commissioner denied benefits on reconsideration. (AR 50-53). Plaintiff requested a hearing before an administrative law judge ("ALJ") on January 24, 2007. (AR 54).

On February 4, 2008, Plaintiff's hearing proceeded before ALJ Joseph Schloss. (AR 19-39). The ALJ rendered an unfavorable decision on February 29, 2008. (AR 6-8). On March 11, 2008, Plaintiff requested Appeals Council review. (AR 68-72). The Appeals Council denied Plaintiff's request for review on May 2, 2008. (AR 2-4). On June 16, 2008, Plaintiff filed the instant complaint.

## FACTUAL HISTORY

**A.   Generally**

Plaintiff was born on August 3, 1968. (AR 73). Plaintiff attended school through the tenth grade, but did not receive a GED. (AR 29). Plaintiff's past occupations included work as a filling line worker, dog groomer, fast food worker and care provider. (AR 31-33). Plaintiff claims disability stemming from anxiety and panic attacks. (AR 84).

2

**B.   Relevant Medical History**

    **1.   Treating Physicians**

    Plaintiff's treating physician at the time of the hearing was Trevinder Ahluwahlia, M.D.[1]   (AR 37).   On January 9, 2007, Dr. Ahluwahlia observed that Plaintiff was alert and did not suffer from any hallucinations or delusions.   (Id.).   Dr. Ahluwahlia noted that Plaintiff had a history of noncompliance with prescribed medication. (AR 201).   Dr. Ahluwahlia recorded that Plaintiff's sleep habits and appetite were "okay."   (Id.).   Dr. Ahluwahlia noted that Plaintiff had no record of hospitalizations.   (AR 202).

    Prior to Dr. Ahluwahlia, Plaintiff was seen repeatedly by the Formula Medical Group.   (AR 139-147; 173-180; 188-193).   On November 8, 2005, Plaintiff complained of suffering from anxiety attacks and stress. (AR 146).   P.A.[2] Dan Lowery examined Plaintiff.   (AR 147).   P.A. Lowery noted that Plaintiff appeared alert and oriented and that her "language, behavior, affect, thought, concentration and judgment are normal."   (AR 146).   Plaintiff was prescribed Paxil.   (AR 147).   On August 18, 2006, P.A. Lowery examined Plaintiff after she complained of panic attacks. P.A. Lowery noted that Plaintiff had not contacted "behavior health," and assessed Plaintiff with a panic disorder and anxiety syndrome.   (AR 175).

--------

    [1]   The hearing transcript records the name of Plaintiff's treating physician as "Dr. Holiwolia."   (AR 37).

    [2]   P.A. is a physician's assistant.

**2. Consultative Physicians**

The Department of Social Services ("DSS") conducted a psychiatric evaluation of Plaintiff on April 4, 2006. (AR 149-152). Plaintiff complained of panic attacks. (AR 149). Plaintiff asserted that she was fearful of leaving her home and suffered from paranoia and suffocating feelings when around people. (Id.).

The examining psychiatrist, John S. Woodward, M.D., noted that Plaintiff's facial expressions, verbalizations and postures suggested "moderated emotional tension and emotional overactivity." (AR 150). Dr. Woodward noted that Plaintiff showed no evidence of "any impatience, irritability or anger," but that she appeared slightly fearful. (Id.). Dr. Woodward found that Plaintiff's "prevailing ideation [did] not indicate significant abnormality in thought processes." (AR 151). Dr. Woodward also noted that Plaintiff did appear to have "significant schizoid sensitivity with some defensive social withdrawal and a faint paranoid trend probably contributing to her anxiety and panic attacks." (Id.). Dr. Woodward noted that Plaintiff "may not be making a maximal effort in responding to questions." (Id.).

Dr. Woodward found that Plaintiff had a borderline level of intellectual functioning. (Id.). Dr. Woodward found in regard to Plaintiff's adaptation to work and work-like situations that:

> Impairments are slight to moderate for withstanding
> normal stresses and pressures in the workplace and for
> interacting with the public; slight for interacting with

4

supervisors and coworkers, for maintaining concentration and
attention for performing detailed, complex tasks and none for
performing simple repetitive tasks.  Incapacity is slight for
working on a continuous basis without special supervision and
slight to moderate for completing a normal workweek without
interruption.

(AR 151).

     As part of Plaintiff's disability determination, D.J. Williams,
M.D., provided a psychiatric assessment of Plaintiff on April 26, 2006.
(AR 153-166).  Dr. Williams indicated that borderline intellectual
functioning was alleged, but also observed that Plaintiff "[gave] less
than adequate effort."  (AR 157).  Dr. Williams noted that Plaintiff's
"calculations are near miss (as in intentional poor performance)," and
that there was no evidence of a lowered IQ.  (Id.).  Dr. Williams found
that Plaintiff's "sudden decline in functioning from [November 2005] to
current makes credibility an issue."  (AR 158).

     Dr. Williams noted that Plaintiff had a history of methamphetamine
abuse, but that Plaintiff claimed no current substance abuse.  However,
Dr. Williams stated that "paranoia and anxiety are standard accompanying
[side effects] of meth abuse, and she is alleging them . . . credibility
is reduced by status of [Plaintiff] in earlier assessment when she was
not aware of being assessed psychiatrically." (AR 161).  Dr. Williams
found that plaintiff was mildly limited in her daily living activities,
moderately limited in maintaining social functioning and moderately
limited in maintaining concentration, persistence or pace.  (AR 163).

Dr. Williams completed a mental residual functional capacity ("MRFC") assessment on April 26, 2006. (AR 167-170). Dr. Williams found that Plaintiff was moderately limited in her ability to interact appropriately with the general public, the ability the complete a normal workday and workweek without interruption and the ability to maintain attention and concentration for extended periods. (AR 167-68).

H.M. Skopec, M.D., completed a case analysis of Plaintiff for the Disability Determination Service ("DDS") on January 3, 2007. (AR 181-82). Dr. Skopec noted that Plaintiff had not complained of a worsening of her condition, and that she was able to manage her house and children. (AR 181). Dr. Skopec noted that Plaintiff had "a severe difficulty and would be best suited in a non-public setting." (Id.).

**3.  Plaintiff's Testimony**

Plaintiff testified that she suffered from depression and panic that interfered with her ability to perform simple tasks. (AR 20-21). Plaintiff stated that she became panicked whenever she was "stressed out." (AR 22). Plaintiff testified that she "forget[s] things all the time." (AR 23). Plaintiff testified that she drives her children to school and drives herself to the doctor. (AR 25-26). Plaintiff stated that she does her children's laundry and cooks for them. (AR 26). Plaintiff testified that she changes her sheets and cleans the bathrooms and floors with her husband. (AR 27).

\\
\\
\\

### 4.  Lay Witness Testimony

Tina Taylor, Plaintiff's sister-in-law, completed a function report regarding Plaintiff.  (AR 105-112).  Ms. Taylor stated that Plaintiff "worry's (sic) about everything . . . is scared to drive anywhere past like 5 miles . . . [and] is real ne[r]v[ou]s around other people." (AR 106).  Ms. Taylor wrote that Plaintiff needed reminders about her medicine because she "forget[s] thing[s] quick[ly] and is scared to take medicine." (AR 107).  Ms. Taylor stated that since the onset of the disability, Plaintiff is no longer able to shop and is constantly worried about money.  (AR 109).  Ms. Taylor noted that Plaintiff's impairments affect her memory, concentration and her ability to talk. (AR 110).  Ms. Taylor further indicated that Plaintiff's impairments interfere with her ability to understand, follow instructions and complete tasks.  (_Id._).  Ms. Taylor opined that Plaintiff can pay attention only for five minutes and noted that she requires explanation of every detail of an instruction.  Ms Taylor summed up Plaintiff's condition as follows:

> Before [Plaintiff] got her illness she would go shop[p]ing with me, she was a very happy person, since her illness she has fear's (sic) over everything.  She stress's (sic) all the time, she needs me to explain just about everything to her.

(AR 112).

\\

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part

_____

[3]  Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1520, 416.910.

404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

9

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 19, 2005.  (AR 11).

At step two, the ALJ found that Plaintiff's impairments were an anxiety disorder and panic attacks.  (<u>Id.</u>).  The ALJ found that both impairments more than minimally limited Plaintiff's ability to perform basic work activities.  (AR 11).

At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (AR 11) (internal citations omitted).

At step four, the ALJ found that Plaintiff's residual functional capacity ("RFC") did not prevent her from performing her past relevant work as a dog groomer, filling line worker, care provider, and fast food worker.  (AR 15).  The ALJ posed the following hypothetical to the vocational expert ("VE"):

> [C]onsider a person who has no physical limitations of any sort but on an MFRC form would be listed as moderate in three areas only, 6, 11 and 12.  A person should do light, simple, complex tasks that are non-public.

(AR 32).

10

The VE responded that Plaintiff could still perform her past relevant work of dog groomer and fast food worker.  (AR 33).

The ALJ found Plaintiff to have the following RFC:

> [Plaintiff] has no physical limitations.  Mentally, the claimant can perform both simple and complex tasks.  Both the State Agency review psychiatrists and the psychiatric consultative examiner were of the opinion that the [Plaintiff] should not work with the general public.  Therefore, I find that the Claimant cannot perform jobs that involve working with the public.

(AR 12) (internal citations omitted).

Based on the above RFC and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past relevant work and thus was not eligible for benefits.  (AR 15).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

11

1    "Substantial evidence is more than a scintilla, but less than a
2    preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence
3    which a reasonable person might accept as adequate to support a
4    conclusion." Id. To determine whether substantial evidence supports
5    a finding, the court must "'consider the record as a whole, weighing
6    both evidence that supports and evidence that detracts from the
7    [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny
8    v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can
9    reasonably support either affirming or reversing that conclusion, the
10   court may not substitute its judgment for that of the Commissioner.
11   Reddick, 157 F.3d at 720-21.

13                                **DISCUSSION**

15   **A.    The ALJ Gave Appropriate Weight To Dr. Skopec's Opinion**

17        Plaintiff asserts that the ALJ failed to properly consider the
18   opinion of Dr. Skopec, a consultative examiner, regarding her mental
19   impairments. (Jt. Stip. at 3). This Court disagrees.

21        Consultative physicians are nontreating sources. Implementing
22   regulations define a "nontreating source" to mean "a physician,
23   psychologist, or other acceptable medical source who has examined [the
24   claimant] but does not have, or did not have, an ongoing treatment
25   relationship with [the claimant]." 20 C.F.R. § 404.1502. This term
26   "includes an acceptable medical source who is a consultative examiner
27   for [the Agency], when the consultative examiner is not [the claimant's]
28   treating source." Id.

                                     12

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). An examining physician's opinion, in turn, generally is afforded more weight than a nonexamining physician's opinion. Orn, 495 F.3d at 631.

Plaintiff contends that "the ALJ selectively accepted all of those findings of Dr. Williams that supported his own conclusion and selectively rejected those findings that are favorable to plaintiff." (Jt. Stip. at 3).

First, it should be noted that Plaintiff mischaracterizes the record. Plaintiff quotes Dr. Skopec's "highly probative opinion," (Jt. Stip. at 3), as follows:

> [Plaintiff] suggests moderate emotional tension and emotional overactivity . . . [t]here is slight generalized fearfulness. She is quite serious and rarely expresses humor. Affect is slightly depressed. She shows significant schizoid sensitivity with some defensive social withdrawal and a faint paranoid trend. She has borderline intellectual functioning.

(Id.).

Plaintiff is correct in that the above text appears in Dr. Skopec's report. (AR 181). However, this text is taken from the report by Dr.

13

Woodward on April 4, 2006, (AR 148-152), and is not Dr. Skopec's opinion.  (AR 181).

Regardless, Plaintiff improperly characterizes the ALJ's consideration of the consultative examiner's opinion.  The ALJ did not reject the opinion.  The ALJ specifically highlighted his reliance on Dr. Woodward's opinion.  (AR 15).  In determining Plaintiff's RFC, the ALJ noted that:

> [Dr Woodward] performed a detailed and thorough examination of the [Plaintiff] and even despite borderline intellectual functioning and poor effort on the [Plaintiff's] part, the [Plaintiff] would still have only mild limitation in completing complex tasks and no limitations in simple, repetitive tasks.  The consultative examiner's opinion is also consistent with the opinion of the State Agency who concluded the [Plaintiff's] ability to carry out detailed tasks was not significantly limited.

(AR 15) (internal citations omitted).

The ALJ, then, gave significant weight to the opinion of Dr. Woodward, the consultative physician.  Thus, Plaintiff's argument is rejected.

\\
\\
\\
\\

**B.   The ALJ Fully Developed The Record**

The record contains psychiatric evaluations of Plaintiff by Drs. Woodward and Williams.  (AR 149-52; 153-66).  The record also contains medical records from Formula Medical Group.  (AR 137-48; 171-80).  Dr. Woodward found that Plaintiff's limitations were slight to moderate for withstanding normal stresses and pressures in the workplace and for interacting with the public.  (AR 151).  Dr. Woodward also found that Plaintiff's limitations were slight for interacting with supervisors and coworkers, for maintaining concentration and attention and for performing detailed, complicated tasks. (Id.).  Dr. Williams found that Plaintiff was moderately limited in her ability to interact appropriately with the general public, the ability the complete a normal workday and workweek without interruption and the ability to maintain attention and concentration for extended periods.  (AR 167-68).

Duty to develop is triggered if there is an inadequate or ambiguous record –- here, it was neither inadequate or ambiguous.  The ALJ has an affirmative duty to fully and fairly develop the record in a social security case.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  The duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.  Id. However, only ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry or gather additional information.  Id. See also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (duty not triggered where the ALJ did not make a

finding that the medical report was inadequate to make a disability determination).

Plaintiff asserts that the ALJ failed to fully develop the record. (Jt. Stip. at 11). Specifically, Plaintiff argues that the ALJ should have subpoenaed Plaintiff's physicians, submitted questions to the physicians, continued the hearing, or kept the record open. (Jt. Stip. at 12).

Here, the ALJ's duty to develop the record was not triggered. The record contains multiple psychiatric evaluations of Plaintiff. The limitations set forth by Plaintiff's various physicians are clear and unambiguous. Furthermore, Plaintiff does not identify what evidence she would have obtained or offered had the record remained open. Thus, Plaintiff's contentions do not require remand.

**C.   The ALJ Properly Considered The Demands Of Plaintiff's Past Relevant Work**

Plaintiff contends that the ALJ "failed to consider any of the actual mental or physical requirements of these jobs." (Jt. Stip. at 15). Plaintiff further asserts that the ALJ failed to provide "the necessary specific findings to support that conclusion." (Jt. Stip. at 17).

The scope of past relevant work includes the actual functional demands and job duties of a particular past relevant job, or the functional demands of the occupation as generally required by employers

16

throughout the national economy.   See 20 C.F.R. § 416.960 (b)(2).   In determining whether a plaintiff can perform past relevant work, VE testimony is not necessary.   See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).

Plaintiff described her past work as a dog groomer in a disability report. (AR 83-88).  Plaintiff noted that the job required no technical knowledge, skills or writing.  (AR 85).  Plaintiff stated that her duties consisted of bathing dogs and preparing them for grooming.   At her hearing, Plaintiff testified that her work as a filling line worker consisted of her making sure that the conveyor did not get stuck.  (AR 31).  At the hearing, the VE testified that Plaintiff could perform both of these jobs with her prescribed limitations.  (AR 33).

The ALJ found Plaintiff to have the following RFC:

> [Plaintiff] has no physical limitations.  Mentally, the claimant can perform both simple and complex tasks.  Both the State Agency review psychiatrists and the psychiatric consultative examiner were of the opinion that the [Plaintiff] should not work with the general public.  Therefore, I find that the Claimant cannot perform jobs that involve working with the public.

(AR 12) (internal citations omitted).

\\

\\

The VE testified at the hearing that Plaintiff could perform "the dog grooming and the line work," but that the inability to work with the public "would eliminate the care provider and fast food."  (AR 33).

Based in part upon the testimony of the VE, the ALJ found that Plaintiff could perform her past relevant work as a dog groomer, filling line worker, care provider, and fast food worker.  (AR 15).  Although the VE testified that Plaintiff could not perform the work of care provider or fast food worker, the ALJ's findings that Plaintiff could work as a line worker and dog groomer comport with the RFC assessed to Plaintiff.  Even if the ALJ's inclusion of care provider or fast food worker was erroneous, the ALJ still correctly found that Plaintiff could perform her past relevant work as a dog groomer or filling line worker.  Any error, if it occurred at all, was therefore harmless error as the outcome would have been the same.  <u>See</u> <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability); <u>Booz v. Sec'y of Health and Human Servs.</u>, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (same).  Thus, no remand is required.

**D.   <u>The ALJ Properly Considered The Lay Witness Testimony</u>**

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.  <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1053 (9th Cir. July 25, 2006); <u>Smolen</u>, 80 F.3d at 1288; 20 C. F. R. §§ 404.1513(d)(4) & (e), and 416.913(d)(4) & (e).  The ALJ may discount the testimony of lay witnesses only if she gives "reasons that are germane to each witness."  <u>Dodrill v. Shalala</u>,

12 F.3d 915, 919 (9th Cir. 1993).   <u>See also</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

An ALJ "need not discuss <u>all</u> evidence presented to her," but rather must explain why significant probative evidence has been rejected. <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(emphasis in original).   In <u>Vincent</u>, the ALJ did not discuss the lay witness testimony of the claimant's son and former employee.   The Ninth Circuit found that this omission did not require reversal because the lay witness testimony conflicted with the available medical evidence.

In the present case, the ALJ concluded that:

> [T]he above residual functional capacity assessment is supported by a lack of psychiatric treatment, indicating any severe limitations.   There is no treating source opinion that the [Plaintiff] is disabled or could not perform tasks within the assessed residual functional capacity.   Finally, both the psychiatric consultative examiner and the State Agency review psychiatrists concluded that the [Plaintiff's] ability to perform detailed tasks was not significantly limited.

(AR 15).

Ms. Taylor, Plaintiff's sister-in-law, submitted a questionnaire. (AR 105-112). In her questionnaire statements, Ms. Taylor noted that Plaintiff's impairments affect her memory, concentration and her ability to talk, understand, follow instructions and complete tasks. (AR 110). Ms. Taylor wrote that Plaintiff could not handle any stress. (AR 111). However, Dr. Woodward found that Plaintiff suffered only slight to moderate limitation for withstanding the normal stresses and pressures of the workplace. (AR 151). Dr. Woodward also noted that Plaintiff had only slight limitations for maintaining concentration and attention and for performing detailed, complex tasks. (Id.).

Plaintiff mentioned all of the limitations noted by Ms. Taylor in her testimony, (AR 20-29), and the ALJ expressly considered these limitations in his opinion. (AR 13-14). The ALJ, therefore, considered all of the limitations noted by Ms. Taylor and incorporated them into his RFC determination.

To the extent that the ALJ erred by not providing multiple specific reasons for rejecting some, if any, of Ms. Taylor's statements, the error was harmless. No reasonable ALJ would have reached a different decision based on the record. See Stout, 454 F.3d at 1055 (a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination). The ALJ in this case clearly considered Ms. Taylor's questionnaire. Any error by the ALJ did not materially impact the ALJ's decision, as the ALJ incorporated the majority of these limitations into the RFC determination. No remand is necessary.

1

**CONCLUSION**

2

3    The ALJ properly considered the opinions of the consultative

4 physician, Dr. Woodward, in assessing Plaintiff's limitations.   The

5 ALJ's duty to develop was not triggered.   The ALJ properly found that

6 Plaintiff could perform her relevant past work.   Finally, the ALJ did

7 properly considered all the limitations discussed in the lay witness

8 testimony.   Thus, Plaintiff's contentions do not warrant remand.

9

10    Consistent with the foregoing, and pursuant to sentence four of 42

11 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered AFFIRMING the

12 decision of the Commissioner and dismissing this action with prejudice.

13 IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

14 Order and the Judgment on counsel for both parties.

15

16 DATED: July 8, 2009.

17                                                /S/

18                            _____
19                            SUZANNE H. SEGAL
                             UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26 _____

27    [4]  This sentence provides: "The [district] court shall have power
to enter, upon the pleadings and transcript of the record, a judgment
28 affirming, modifying, or reversing the decision of the Commissioner of
Social Security, with or without remanding the cause for a rehearing."

21